UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRE WASHINGTON                                        CIVIL ACTION

VERSUS                                                           NO. 12-1429

MICHAEL J. ASTRUE, COMMISSIONER            SECTION "H" (2)
OF SOCIAL SECURITY ADMINISTRATION

**ORDER ON MOTION;**
**FINDINGS AND RECOMMENDATION**

Plaintiff, Andre Washington, seeks judicial review pursuant to Section 405(g) of
the Social Security Act (the "Act") of the final decision of the Commissioner of the
Social Security Administration (the "Commissioner"), denying plaintiff's claim for
supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C.
§§ 405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant
to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

Although ordered to file a memorandum of facts and law, Record Doc. No. 13,
plaintiff filed a motion for summary judgment. Record Doc. No. 14. Defendant filed a
timely reply memorandum of facts and law. Record Doc. No. 15.

Washington moved for leave to submit new and material evidence. Record Doc.
No. 16. The Commissioner filed a timely memorandum in opposition. Record Doc.
No. 18. Having considered the record, the submissions of the parties and the applicable
law, and for the reasons stated below, IT IS ORDERED that plaintiff's motion to submit

new evidence is DENIED.  In addition, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED and his complaint be DISMISSED WITH PREJUDICE.

I.      PROCEDURAL HISTORY

Washington filed an application for SSI on April 28, 2010, alleging disability since April 28, 2008, due to cerebral palsy.  (Tr. 107, 121).  After his application was denied initially, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 10, 2011.  (Tr. 27-56).  On March 4, 2011, the ALJ issued a decision, finding that Washington has a severe impairment consisting of cerebral palsy, does not have any impairments that meet or medically equal any of the listings and has the residual functional capacity to perform a limited range of light work, and that significant numbers of jobs exist in the national economy which he could perform. (Tr. 16-23).  After the Appeals Council denied review on April 4, 2012, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-3).

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.      The ALJ erred by finding that Washington does not meet Listing 1.02 for disability based on major dysfunction of a joint or Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint.

2

B.   The ALJ erred by finding that Washington does not medically equal Listing 11.07 for cerebral palsy with disorganization of motor function.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Washington has a severe impairment, consisting of cerebral palsy that affects his left lower extremity.

2.   He does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 416.920(d), 416.925 and 416.926.  The ALJ expressly considered Listing 11.07 for cerebral palsy, but found no evidence that plaintiff meets its requirements.

3.   Plaintiff has the residual functional capacity to perform light work with the following limitations:  he can never operate foot controls with the left foot; can occasionally climb ladders, ropes, scaffolds, ramps or stairs; can occasionally balance, stoop and crouch; must avoid repetitive flexion or extension of the left foot; and must avoid all concentrated use or exposure to moving machinery and unprotected heights.

4.   Considering his age, limited education and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform.

(Tr. 18-23).

## IV.   PLAINTIFF'S MOTION TO SUBMIT NEW AND MATERIAL EVIDENCE

Washington seeks to supplement the administrative record with a fully favorable decision of the Commissioner dated <u>after</u> the decision at issue in the instant case.  On March 4, 2011, ALJ Tamia M. Gordon denied the application that is on appeal in this court.  On June 9, 2011, plaintiff filed a <u>new</u> application for SSI.  In a decision dated

December 18, 2012, a different ALJ, Charlotte N. White, found that Washington was disabled <u>as of his second</u> application date.  Attachment to plaintiff's memorandum in support, Record Doc. No. 16-1.

Plaintiff contends that ALJ White's decision relates to the time period at issue in this court because she considered medical evidence from at least 12 months before June 9, 2011, which included the same evidence that ALJ Gordon considered.  He argues there is a reasonable possibility that the later decision would change the outcome of the Commissioner's decision in the instant case.  He has submitted to this court only ALJ White's decision.  He has not submitted any of the medical records ALJ White considered that were dated <u>after</u> ALJ Gordon's decision.  Plaintiff asks that this matter be remanded to the Commissioner for consideration of the allegedly new and material evidence.

This court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010); <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, I must determine whether this case should be remanded so that the Commissioner may consider ALJ White's December 18, 2012 decision.

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); <u>Ferrari</u>, 435 F. App'x at 314; <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)."  <u>Wilson v. Astrue</u>, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing <u>Pierre v. Sullivan</u>, 884 F.2d 799, 803 (5th Cir. 1989); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1058 (5th Cir. 1987)); <u>accord</u> <u>Perkins v. Shalala</u>, 36 F.3d 90, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); <u>Martin v. Barnhart</u>, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (citing <u>Pierre</u>, 884 F.2d at 803).

New evidence must be material to be the basis for a remand.  The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied."  <u>Castillo v. Barnhart</u>, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing <u>Ripley</u>, 67 F.3d at 555); <u>accord</u> <u>Joubert</u>, 287 F. App'x at 383.  The new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.  <u>Id.</u>; <u>Garson</u>, 162 F. App'x at 303.

5

"For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination."  Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)) (quotations omitted); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)).

The Commissioner argues that the later decision is not material and would not change the outcome in the instant case because ALJ White considered medical evidence that postdated ALJ Gordon's decision by two months to one year.  ALJ White found Washington disabled as of June 9, 2011, three months after the earlier decision found that he was not disabled.  "While such a finding may suggest a potential inconsistency with the ALJ's decision at issue in this case, courts have held that a subsequent favorable decision is not sufficient, by itself, to warrant a sentence six remand."  Estes v. Astrue, No. 1:10-cv-0015, 2012 WL 423372, at *2 (D. Utah Feb. 8, 2012).

The Fifth Circuit has held that

[w]hether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious at the time of consideration.  Here, the ALJ determined that the evidence at the time indicated [that plaintiff] was not disabled.  We may disturb this judgment only if "there is a conspicuous absence of credible choices or no contrary medical evidence."

Winston ex rel. D.F. v. Astrue, 341 F. App'x 995, 998 (5th Cir. 2009) (quoting Hames

v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)) (emphasis in original); accord Alexander

v. Comm'r of Soc. Sec., No. 08-1570, 2010 WL 2428453 at *2 (W.D. La. Apr. 5, 2010),

report & recommendation adopted, 2010 WL 2484219 (W.D. La. June 10, 2010), aff'd,

412 F. App'x 719 (5th Cir.), cert. denied, 132 S. Ct. 259 (2011).

Two appellate courts and numerous district courts outside the Fifth Circuit have

ruled that a later favorable decision, standing alone, cannot be material evidence.

> The Sixth Circuit Court of Appeals has held that "a subsequent favorable
> decision itself, as opposed to the evidence supporting the subsequent
> decision, does not constitute new and material evidence under § 405(g)."
> Allen v. Commissioner of Social Security, 561 F.3d 646, 652-53 (6th Cir.
> 2009).  The Third Circuit Court of Appeals has also adopted this position,
> finding that a subsequent award of benefits did not require "remand or
> reversal in the absence of new and material evidence, which claimant here
> has failed to provide." Jackson v. Astrue, 402 Fed. Appx. 717, 718 (3d Cir.
> 2010) (unpublished).  At least two district courts in the Tenth Circuit have
> followed this position.  See Estes v. Astrue, 2012 WL 423372 (D. Utah
> February 8, 2012) (unpublished); Mosley v. Astrue, [No. 09-CV-02005-
> LTB,] 2010 WL 3777232 (D. Colo. September 20, 2010) (unpublished).

Baker v. Astrue, No. 11-cv-566-CVE-TLW, 2012 WL 5878876, at *7-8 (N.D. Okla.

Oct. 15, 2012) (footnote omitted), report & recommendation rejected on other grounds,

2012 WL 5878877 (N.D. Okla. Nov. 21, 2012); accord Cunningham v. Comm'r of Soc.

Sec., No. 11-2633, 2012 WL 6200379, at *8 (3d Cir. Dec. 13, 2012).

A few courts, including the Ninth Circuit in Luna v. Astrue, 623 F.3d 1032 (9th

Cir. 2010), have held to the contrary "that a subsequent allowance of disability benefits

may be 'new' and 'material' evidence warranting a remand under 42 U.S.C. § 405(g). These decisions are in the minority on this issue[.  A]s the Commissioner argues, a growing number of district courts have followed the Sixth Circuit's reasoning" in Allen. Perry v. Astrue, No. 10-11004-DPW, 2012 WL 645890, at *12 (D. Mass. Feb. 27, 2012) (citing Johnson v. Astrue, No. 3:09-2458-JMC-JRM, 2011 WL 902966, at *4 (D.S.C. Mar. 15, 2011); Jirau v. Astrue, 715 F. Supp. 2d. 814, 825-26 (N.D. Ill. 2010); Mosley, 2010 WL 3777232, at *5; Garcia v. Astrue, No. 3:09-cv-26, 2010 WL 3769473, at *3 (D.N.D. Aug. 27, 2010), report & recommendation adopted, 2010 WL 3768462 (D.N.D. Sept. 17, 2010); Brown v. Astrue, No. CV-08-247-Cl, 2009 WL 2750726, at *8 (E.D. Wash. Aug. 25, 2009)).

"A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." Allen, 561 F.3d at 653 (emphasis in original). In the instant case,

> [Washington] does not suggest any particular piece of evidence underlying the subsequent favorable decision [that] he had good cause for not raising in the matter now before me.  Although [Washington] includes the [December 18, 2012 favorable] decision in his motion, he does not include any of the underlying evidence, and it is not possible to tell if the evidence discussed in the decision is cumulative, is based on the claimant's deteriorating state after the [March 4, 2011] decision, or otherwise fails to meet the "new" and "material" requirements.

Perry, 2012 WL 645890, at *12 (citing Allen, 561 F.3d at 653).

8

The Sixth Circuit's analysis in <u>Allen</u> "'makes sense because using a subsequent decision as independent evidence is tantamount to a collateral attack on the initial decision.  Permitting a claimant to obtain a remand in a similar case would run counter to the need for finality and consistency between SSA disability determinations.'" <u>Atkinson v. Astrue</u>, No. 5:10-CV-298-FL, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011), <u>report & recommendation adopted</u>, 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011) (quoting <u>Sayre v. Astrue</u>, No. 3:09-01061, 2010 WL 4919492, at *4 (S.D. W. Va. Nov. 29, 2010)).  "The mere fact that a second ALJ weighed the evidence differently does not authorize reversal by a district court; the standard is whether the first ALJ's decision was supported by substantial evidence on the record, not whether it was the only possible reasonable decision."  <u>Perry</u>, 2012 WL 645890 at *11 (citing 42 U.S.C. § 405(g); <u>Allen</u>, 561 F.3d at 654; <u>Seavey v. Barnhart</u>, 276 F.3d 1, 10 (1st Cir. 2006)).

I agree with the reasoning of the Sixth and Third Circuits, as well as the majority of the district court opinions on this issue, that ALJ White's December 18, 2012 favorable decision is not material in the instant case and does not warrant a remand to the Commissioner.  Accordingly, plaintiff's motion to submit new evidence is DENIED.

V.      ANALYSIS OF PLAINTIFF'S APPEAL

    A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2010).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.    Factual Background

At the administrative hearing, plaintiff's attorney argued that Washington meets Listing 1.03 because he had cerebral palsy with multiple surgeries to his leg and hip, his

---

returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
     Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

hip is dislocated and goes in and out of its socket, and he is unable to ambulate effectively. Alternatively, if plaintiff is able to ambulate effectively, counsel argued that he is only capable of performing less than sedentary work because of his problems ambulating and his inability to sit for prolonged periods as a result of his hip dislocation.

Washington testified that he suffered from cerebral palsy since birth, which was diagnosed when he was one year old. He said he had two left hip surgeries and one right knee surgery in the 1990s, related to the growth process of his right leg. He stated that his left hip bone "was sitting on the side" and that he has a plate with two screws in it to hold it in place. He explained that the cerebral palsy affected the left side of his body, mainly his left leg. (Tr. 33-34). He testified that the purpose of his left hip surgery was to keep the hip bone placed inside the socket and the purpose of his right knee surgery was to stop the growth process because his left leg was a couple of inches shorter than his right leg at that time. He stated that his left leg is still shorter than the right.

Plaintiff said that his left hip bone goes in the socket and that he might fall when he walks, or might catch his balance. He testified that he normally uses a cane, but he forgot it that day because he was in a hurry to catch the bus to attend the hearing. He stated that his left hip bone tilts when he moves and might crack, "but it doesn't sit in the socket at all. It sits outside the socket . . . ." He testified that his left foot does not lift up when he walks, but only flops down. (Tr. 34).

Washington said he can walk four or five blocks before he has to rest.  He stated that he can stand for two hours and sit for about the same time.  He testified that he would have to lie down and rest for two to three hours after sitting or standing for an hour because of pain in his left hip as a result of the bone not sitting in the socket.  He stated that nothing else can be done to fix his hip.  (Tr. 35-36).

Plaintiff testified that he "was required to wear I believe it was a UFO [PHONETIC] for my left foot instead of it flop dropping down, it would stay in one position."  He said he still has problems with his foot dropping and that sometimes, when walking, his leg might "give out on me just like a little spasm."   He stated that he only "takes a minute to go shopping" because he knows what he needs and he hurries because he is limited to short periods of time on his feet.  He testified that he keeps his own room clean and helps his mother sweep and wash the dishes, but she does all of the other household chores.  (Tr. 36-37).

Washington testified that he normally uses a cane when he goes out, which helps him to walk.  He said that no doctor told him to use a cane, which he obtained on his own.  He stated that he can lift no more than 10 to 15 pounds because lifting "puts friction on my hips."

Plaintiff said he was working as a bakery helper when he was incarcerated in 2000 and at a restaurant in 2002, while he was incarcerated again.  (Tr. 37).  He testified that,

at the bakery, he helped place the dough on the table, cut the dough and pass trays of dough to another person who put them in the oven.  He said the pans weighed no more than five pounds and that he did not have to lift any heavy sacks in that job.  He stated that he was a dishwasher prep cook at a restaurant, but he had someone helping him in that area.  He said he had no other jobs.

Washington testified that he was incarcerated in 1998 for distribution of cocaine, was sentenced to five years, served 30 months and was released in January 2001.  (Tr. 38-39).  He was incarcerated in September 2001 for a parole violation and was released in December 2002, then was incarcerated again from May 2007 until March 2010 on a charge of murder of his brother and attempted murder.  He stated that he worked at a restaurant when he was sent to a halfway house six months before his release and worked at the job for two to four months.  (Tr. 39-40).  He said that his last incarceration was in a jail, not a halfway house.

Plaintiff stated that he lives with his mother and four nieces and nephews under the age of 18 in a one-story house.  (Tr. 40-41).  He said he is able to go up and down the four steps of the porch with the help of a railing.  He testified that he has to place his right foot first on each step, then follow with his left foot, because of his left foot drop, which leaves him with no control over the foot.  (Tr. 41-42).

Washington said he was expelled from school in the ninth grade because he was in a lot of fights when people called him a cripple and teased him about his skinny leg and the way he walked,. He stated that he would like to get a GED as soon as he is able, but he has not signed up for it. (Tr. 42-43). He testified that he does not have a driver's license because he has not "been able to go try to get it." He said he can read a newspaper, write and do simple math, including counting money. (Tr. 43-44).

Plaintiff testified that he can take a shower, get in and out of the shower by himself without any hand rails or cane, and dress himself. He said he does not take baths because he would have difficulty getting up from sitting in a tub and would need some kind of assistance to lift himself up. (Tr. 44-45). He stated that he has no trouble lifting his arms to wash his hair or otherwise reaching overhead and that he can support his body weight while he is in the shower for five to ten minutes. He said he must hold on to the wall to balance himself while getting in and out of the tub for a shower. (Tr. 45).

Washington stated that he can ride a bicycle if it has a big seat, so that he could be comfortable sitting. He said he primarily uses his right leg to operate a bike and occasionally stands up from a sitting position on the bike to balance on the pedals. He testified that he has no trouble operating hand brakes on a bicycle.

Plaintiff said he has not had any vocational or skills training other than training to be a prep cook when he was incarcerated. He stated that he does not intend to use

16

those skills in the future because he would not be able to stand now.  (Tr. 46-47).  He testified that he used to be able to stand longer than he can now.  He said he has not looked for work because of his pain, muscle spasms and all the medication he takes, including Percocet, and because his leg "goes out a lot."  He testified that he does not believe he is able to work or will ever be able to work.  He is 32 years old.  (Tr. 47).

Washington stated that he has never looked for a job where he could sit most of the day.  He testified that his only income is $200 that his mother gives him each month and that he receives $200 per month in food stamps.  He said he currently receives "free health care because I applied for Medicaid and they denied me also."  (Tr. 48).  He stated that he was told that his Medicaid application was denied because his SSI application was denied.  He said his SSI application is not correct when it states he became disabled on April 28, 2008.  He believes he became disabled when he was born.  (Tr. 49).  He said the alleged onset date was while he was incarcerated and he did not know why the alleged onset date was two years before his application filing date.  (Tr. 50).

C.    Vocational Expert Testimony

A vocational expert, Mary Ellen Kelly, testified at the hearing that plaintiff's past relevant work as a bakery helper was unskilled work customarily performed at a heavy exertional level, but plaintiff's description of his job sounded like part-time and sedentary.  (Tr. 51-52).  She stated that a cook's helper job is normally classified as

unskilled in the medium exertional category, but that plaintiff's description qualified this job as part-time sedentary work. She said Washington had no transferable skills.

The ALJ posed a hypothetical of an individual with plaintiff's age, education and past relevant work who has the residual functional capacity for light work, with the following limitations: he can never use foot controls on the left; can occasionally climb ladders, ropes, scaffolds, ramps or stairs; can occasionally stoop and crouch; and must avoid all concentrated use or exposure to moving machinery and unprotected heights. Kelly testified that such a person could not perform Washington's past relevant work either as he performed it or as customarily performed. (Tr. 52). She stated that the hypothetical would allow for unskilled, light work as a cashier, receptionist/information clerk and office clerk, all of which are available in significant numbers in the Louisiana and national economies.

The ALJ posed a second hypothetical of an individual with the same limitations as above, with the addition of being able to balance occasionally and with no repetitive flexion or extension of the left foot. Kelly testified that such a person could not perform any of Washington's past relevant work, but could still perform all of the jobs she listed in response to the first hypothetical. (Tr. 53).

The ALJ's third hypothetical included all of the same limitations and the additional restriction that, due to medical conditions associated with cerebral palsy, the

person would be unable to engage in sustained work activity for a full eight-hour work day on a regular and consistent basis.  Kelly testified that this individual could not perform any job.  She stated that the list of jobs she provided in response to the first two hypotheticals was a representative list.  (Tr. 54).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 19-22).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    Substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet Listing 1.02 for disability based on major dysfunction of a joint or Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint.

Washington contends that the ALJ erred by finding at the third step of the sequential evaluation that his impairment or combination of impairments does not meet either Listing 1.03 for reconstructive surgery or surgical arthrodesis[2] of a major weight-bearing joint (his left hip) or Listing 1.02A for disability based on major dysfunction of

_____

[2] Arthrodesis is "[t]he stiffening of a joint by operative means."  It is a synonym for artificial ankylosis.  Stedmans Medical Dictionary (27th ed. 2000), avail. on Westlaw at STEDMANS 33160 (hereinafter "STEDMANS").  Ankylosis is the "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint."  STEDMANS 23900.

a hip joint.  Despite the argument of his counsel at the hearing that Washington meets Listing 1.03, the ALJ did not specifically address either of these two listings in her opinion.  She expressly discussed only Listing 11.07 for cerebral palsy and found no evidence of the required elements of an IQ of 70 or less; destructiveness; emotional instability; speech, hearing or visual defects; or disorganization of motor function sufficient to satisfy the listing.  (Tr. 18).

Plaintiff argues that the ALJ's summary conclusion that he does not have an impairment or combination of impairments that meets or medically equals any listed impairment and her failure to address specifically Listings 1.02 and 1.03 requires a remand to consider those two listings.  The Commissioner concedes that the ALJ erred by summarily concluding that Washington does not meet any listing, but argues that the error was harmless because the medical evidence does not substantially support a finding that Washington meets either of these two listings.

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered <u>only</u> by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); <u>McCuller v. Barnhart</u>, 72 F. App'x 155, 158 (5th Cir. 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), <u>aff'd</u>, 340 F. App'x 176 (5th Cir. 2009).

"The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994)). "'Whether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion. . . .  In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation.'" Avery v. Astrue, 313 F. App'x 114, 121 (10th Cir. 2009) (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)).

Thus, Washington must identify specific medical evidence demonstrating that he meets all the criteria of Listing 1.02A or 1.03.  Listing 1.03 requires "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03 (emphasis added).

Listing 1.02A provides as follows:

> Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation,[3] contracture,[4] bony or fibrous ankylosis,[5] instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  <u>With</u>:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in <u>inability to ambulate effectively, as defined in 1.00B2b</u> . . . .

<u>Id.</u> § 1.02(A) (emphasis added).

To satisfy either listing, plaintiff must show that he meets the definition of "inability to ambulate effectively" in Section 1.00(B)(2)(b).  That section provides:

> (1)  Definition.  Inability to ambulate effectively means an <u>extreme limitation of the ability to walk</u>; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation <u>without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities</u>. . . .
> (2)  To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited

---

[3]Subluxation is an "incomplete luxation or dislocation."  STEDMANS 390690.

[4]Contracture is "[s]tatic muscle shortening due to tonic spasm or fibrosis, to loss of muscular balance, the antagonists being paralyzed or to a loss of motion of the adjacent joint."  STEDMANS 89800.

[5]Ankylosis is "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint."  STEDMANS 23900.

> to, the <u>inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces,</u> the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

<u>Id.</u> § 1.00(B)(2)(b) (emphasis added).

Even if the ALJ erred by failing to discuss Listing 1.03 or 1.02A specifically, the error is harmless, unless Washington can point to substantial medical evidence that he meets either listing.  An ALJ's failure to explain her step three findings "does not require remand unless the claimant's 'substantial rights' were affected.  A claimant's substantial rights are affected at Step 3 when he demonstrates that he meets, or at least appears to meet, the requirements for a Listing.  In other words, the ALJ's error may be harmless." <u>Reynolds v. Astrue</u>, No. 1:08cv228-SAA, 2010 WL 583918, at *6 (N.D. Miss. Feb. 16, 2010) (citing <u>Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007); <u>Morris v. Bowen</u>, 864 F.2d 333, 334 (5th Cir. 2007)); <u>accord</u> <u>Tolliver v. Astrue</u>, No. 6:09-cv-0135, 2010 WL 3522396, at *6 (W.D. La. July 29, 2010), <u>report & recommendation adopted</u>, 2010 WL 3522502 (W.D. La. Aug. 31, 2010).

Washington and the Commissioner agree that whether plaintiff satisfies either listing depends on whether he meets the Section 1.00(B)(2)(b) definition of "inability to ambulate effectively."  I find that Washington has failed to identify substantial evidence

that he has an extreme limitation of his ability to walk, as defined by Section 1.00(B)(2)(b).

As evidence that he cannot ambulate effectively, plaintiff relies in part on his own testimony regarding his hip pain, left foot drop, difficulty walking, need to climb stairs by leading with his right foot at every step, short shopping trips and use of a non-prescribed cane to assist in keeping his balance.  His testimony is not <u>medical</u> evidence, as required to meet the objective tests of the listings.  However, his reports of some of these symptoms are incorporated in the medical evidence described below.

Washington relies on the report of a consultative examination by internist Gary Carroll, M.D. dated June 15, 2010.  Dr. Carroll noted that plaintiff reported "intermittent pain and weakness of his left lower extremity . . . , which results in impairment of gait. He has a left foot drop.  He is not presently under follow-up and uses Tylenol for relief of pain.  He has occasionally used an assistive device" for support.  (Tr. 184).  Dr. Carroll found hypoplasia[6] of Washington's left leg, which was both shorter than his right leg and had a diminished circumference in comparison to the right.  Plaintiff had full range of motion in the joints of his lower extremities, except that he could not perform dorsiflexion of the left ankle.  Dr. Carroll observed that Washington was

---

[6]Hypoplasia is:  "1. Underdevelopment of a tissue or organ, usually due to a deficiency in the number of cells.  2. Atrophy due to destruction of some of the elements and not merely to their general reduction in size."  STEDMANS 196070.

steady at station without support.  He ambulated with a significant limp and with eversion[7] at the left ankle. . . .  The patient was able to perform tandem gait but could not walk on his heels and tiptoes.  He did not require an assistive device while ambulating in our office but would certainly profit from the support of a cane when ambulating out of doors or on uneven surfaces.

(Tr. 187).

Washington also cites the observations of health care providers in emergency rooms on two occasions that he had gait compromise (Tr. 207, dated September 25, 2010) or antalgic gait[8] (Tr. 217, dated December 13, 2010) and once that he had "painful" range of motion.  Plaintiff fails to point out that the last cited note actually states that he had "slightly painful," full range of motion.  (Tr. 219, dated January 9, 2011).  Emergency room providers also noted on two occasions that plaintiff had no history of falling in the last three months and did not use aids in ambulation.  (Tr. 207 dated September 25, 2010; Tr. 209 dated October 23, 2010).  The December 13, 2010 notes state that he had no pain on range of motion.  (Tr. 217).  Other medical notes reflect that Washington had normal range of motion in his joints and was able to stand and ambulate without difficulty.  (Tr. 202, October dated 23, 2010; Dr. Carroll's report, Tr. 187).

---

[7]Eversion is "[a] turning outward, as of the eyelid or foot."  STEDMANS 141710.

[8]Antalgic gait is "a characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side."  STEDMANS 156940.

The medical evidence does not establish that plaintiff is unable to ambulate effectively.  He admittedly does not require the use of a hand-held assistive device, such as a walker or two canes, that limits the functioning of both upper extremities.  Although Dr. Carroll suggested that plaintiff might "profit from the support of a cane when ambulating out of doors or on uneven surfaces," he did not state that Washington was unable to accomplish these activities unless he used a single cane, much less a walker or two canes.

Nor does the record substantially support a conclusion that plaintiff cannot walk a block at a reasonable pace, carry out routine ambulatory activities such as shopping, or climb a few steps at a reasonable pace with the use of a single hand rail.  To the contrary, he testified that he was never prescribed the use of a cane, was able to take the bus to attend the hearing despite having forgotten his cane, can walk four or five blocks, shops for his own needs and climbs the four steps to the porch with a railing.  These activities are inconsistent with an extreme limitation of the ability to walk.  See Bullock v. Astrue, 277 F. App'x 325, 328 (5th Cir. 2007) (Plaintiff failed to show inability to ambulate effectively when she "is able to walk with the help of a single cane, not a walker, two crutches or two canes.  Bullock has indicated that she is able to climb stairs with the use of a handrail and at her last documented visit to a physician, . . . she indicated that she [is] able to walk two blocks at a time."); Prince v. Colvin, No. 5:12-

CV-751-LSC, 2013 WL 754859, at *5 (N.D. Ala. Feb. 27, 2013) (Plaintiff did not meet

Listing 1.02A when "the record contains no indication that Plaintiff was ever <u>prescribed</u>

a hand-held assistive device or that its use limited the functioning of <u>both</u> of Plaintiff's

arms."); SSR 96-9p, 61 Fed. Reg. 34478-01, 1996 WL 362208, at *34482 (July 2, 1996)

("To find that a hand-held assistive device is medically required, there must be medical

documentation establishing the need for a hand-held assistive device to aid in walking

or standing, and describing the circumstances for which it is needed (i.e., whether all the

time, periodically, or only in certain situations; distance and terrain; and any other

relevant information).").

Despite the ALJ's failure to discuss Listing 1.02 or 1.03 specifically, the evidence

substantially demonstrates that Washington did not have an extreme limitation of his

ability to walk at that time, as defined by Section 1.00(B)(2)(b), and therefore did not

meet either listing.  Accordingly, plaintiff's first assignment of error lacks merit.

> 2.     Substantial evidence supports the ALJ's finding that Washington's impairments do not medically equal Listing 11.07 for cerebral palsy <u>with disorganization of motor function.</u>

Washington contends that the ALJ erred by finding that his combined impairments

are not the medical equivalent of Listing 11.07D.  Listing 11.07D requires a diagnosis

of cerebral palsy with "[d]isorganization of motor function as described in 11.04B."  20

C.F.R. Pt. 404, Subpt. P, App. 1, § 11.07.  Section 11.04B requires "[s]ignificant and

27

persistent disorganization of motor function in <u>two extremities</u>, resulting in sustained

disturbance of gross and dexterous movements, or gait and station (see 11.00C)." <u>Id.</u>

§ 11.04B (emphasis added).

> Section 11.00C describes:
>
> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations . . . . The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

<u>Id.</u> § 11.00C.

"For a claimant to qualify for benefits by showing that his unlisted impairment,

or combination of impairments, is 'equivalent' to a listed impairment, he must present

medical findings equal in severity to <u>all</u> the criteria for the one most similar listed

impairment." <u>Zebley</u>, 493 U.S. at 5301 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91)

(emphasis in original). "An impairment that manifests only some of the requisite criteria,

no matter how severely, does not qualify. If the plaintiff fails to demonstrate the

specified medical criteria, the court will find that substantial evidence supports the ALJ's

finding that listings-level impairments are not present." <u>Gewin v. Astrue</u>, No. 10-1008,

2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), <u>report & recommendation adopted</u>,

2011 WL 3954877 (W.D. La. Sept. 6, 2011) (citing <u>Zebley</u>, 493 U.S. at 530-31; <u>Selders</u>,

914 F.2d at 620); accord Taylor v. Astrue, No. 3-10-CV-1158-O-BD, 2011 WL 4091506,

at *8 (N.D. Tex. June 27, 2011), report & recommendation adopted, 2011 WL 4091503

(N.D. Tex. Sept. 14, 2011).

> A claimant cannot qualify for benefits under the "equivalence" step by
> showing that the overall functional impact of his unlisted impairment or
> combination of impairments is as severe as that of a listed impairment.
> SSR 83-19, at 91-92 ("[I]t is incorrect to consider whether the listing is
> equaled on the basis of an assessment of overall functional impairment. . . .
> The functional consequences of the impairments . . . irrespective of
> their nature or extent, cannot justify a determination of equivalence") (emphases
> in original).

Zebley, 493 U.S. at 531-32.

Washington concedes that he does not meet Listing 11.07 because he has

disorganization of motor function in only one extremity.  He argues that the combination

of his cerebral palsy with disorganization of motor function in his left leg and

subluxation of his left hip (which is confirmed by x-rays, Tr. 183, 212-13) medically

equals this listing because these impairments interfere with his locomotion, as

documented in Dr. Carroll's report and the emergency room provider's notes cited in the

preceding section of these findings and recommendation.  He argues that the limitations

caused by subluxation of his left hip and his prior surgeries are "of at least equal medical

significance . . . to Listing 11.07's requirement of disorganization of motor function in

a second extremity."  Record Doc. No. 14-1, at p. 15.

Substantial evidence supports the ALJ's findings in this regard.  As discussed in the preceding section of these findings and recommendation, the gait disturbance caused by plaintiff's medical problems affects only his left leg and does not significantly limit him in his abilities to ambulate and engage in activities of daily living, such as shopping, using public transportation, climbing stairs and taking care of his personal needs.  The evidence therefore does not substantially support a determination that Washington's combination of impairments is medically equivalent to Listing 11.07D.

Accordingly, plaintiff's second assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ did not err by finding that Washington did not meet Listing 1.02 for disability based on major dysfunction of a joint or Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, or by finding that Washington did not medically equal Listing 11.07 for cerebral palsy with disorganization of motor function.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED and his complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___13th___ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.